UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sloan Valve Company,<br><br>  Plaintiff,<br><br>v.<br><br>New Rich Worldwide Trade Limited, and<br><br>Zhejiang Kexin Industry Co., LTD.,<br><br>  Defendants. | Case No. 1:23-cv-1122<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1);**<br>(2) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(3) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(4) **INJURY TO BUSINESS REPUTATION AND TRADE DRESS DILUTION IN VIOLATION OF ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT, 765 ILCS 1036/65;**<br>(5) **VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/2;**<br>(6) **COMMON LAW TRADE DRESS INFRINGEMENT;**<br>(7) **COMMON LAW UNFAIR COMPETITION;**<br>(8) **COMMON LAW MISAPPROPRIATION; AND**<br>(9) **UNJUST ENRICHMENT.**<br><br>  **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Sloan Valve Company ("Sloan"), for its complaint against New Rich Worldwide

Trade Limited (新富環球貿易有限公司, "New Rich"), and Zhejiang Kexin Industry Co., LTD.

(浙江科欣实业有限公司, "Kexin") (collectively the "Defendants"), alleges as follows:

**The Parties**

1. Sloan is a company organized and existing under the laws of the State of Delaware with a principal place of business at 10500 Seymour Avenue, Franklin Park, Illinois 60131.

2. New Rich is a company organized under the laws of Hong Kong Special Administrative Region with a registered address of RM1303, 13/F, Cheong Tai Building, No.287-289 Reclamation Street, Kowloon, HK and a place of business at RM 1202, 12/F, Tung Chun Comm, CTR 438-444, Shanghai St, KL, Hong Kong, 999077, China.

3. Kexin is a company organized under the laws of China with a registered address of No.408, Binhai Liu Street, Wenzhou Economic and Technological Development Zone, Wenzhou City (浙江省温州市温州经济技术开发区滨海六道408号). On information and belief, Kexin's address is No.388, Binhai Twenty-first Street, Longwan District, Wenzhou Economic and Technological Development Zone, Wenzhou City (浙江省温州市龙湾区滨海二十一路388号).

**Jurisdiction and Venue**

4. This is an action for counterfeiting, trade dress infringement, unfair competition and false designation of origin, injury to business reputation and dilution, deceptive trade practices, misappropriation, and unjust enrichment. This action arises under 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), 765 ILCS 1036 (the "Illinois Trademark Registration and Protection Act"), 815 ILCS 510 (the "Illinois Deceptive Trade Practices Act"), federal common law, and the common law of the State of Illinois.

5. This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

6.     This Court has personal jurisdiction over the Defendants based on their contacts with, and because they are doing business in, the State of Illinois, including in this District. For example, and as set forth in more detail in this Complaint, (i) the Defendants have been using a product design that is substantially indistinguishable from or confusingly similar to Sloan's trade dress to advertise, promote, offer for sale, sell, or distribute products to customers or potential customers in the State of Illinois, including in this District, (ii) Defendants' tortious acts giving rise to this lawsuit and harm to Sloan have occurred and are occurring in the State of Illinois, including in this District, (iii) Defendants' customers or potential customers reside in the State of Illinois, including in this District and (iv) Defendants benefit financially from the Illinois market, including, for example, through sales of infringing products in Illinois, including this District.

7.     Alternatively, this court has personal jurisdiction over the Defendants pursuant to at least Federal Rule of Civil Procedure 4(k)(2).

8.     Exercising jurisdiction over New Rich and Kexin under Rule 4(k)(2) is consistent with the United States Constitution and laws based upon their contacts with the United States. For example, and as set forth in more detail in this Complaint, (i) the Defendants have been using a product design that is substantially indistinguishable from or confusingly similar to Sloan's trade dress to advertise, promote, offer for sale, sell, or distribute products to customers or potential customers in the United States, (ii) the Defendants' tortious acts giving rise to this lawsuit, and the resulting harm to Sloan, have occurred and are occurring in the United States, (iii) the Defendants' customers or potential customers reside in the United States and (iv) Defendants benefit financially from the United States market, including, for example, through sales of infringing products manufactured by Defendants that occur in the United States, including in this District.

9.     Venue is proper in this District pursuant to at least 28 U.S.C. § 1391(b) and (c).

**General Allegations – Sloan and Sloan's Intellectual Property**

10.     Sloan was founded by William Elvis Sloan in 1906 in Chicago, Illinois. Since its founding, four generations of Mr. Sloan's family have grown the company into an industry leader and have continuously engaged in the development, manufacture, promotion, and sale of a wide range of products, including fixtures for commercial bathrooms. For over a century, Sloan has continuously used its trademarks and trade dress throughout the United States and the State of Illinois in connection with its company and products.

11.     Sloan has received numerous awards recognizing its products and their design, as described, for example, on Sloan's website at https://www.sloan.com/company/news-press/press-room/awards. Sloan and its products have also enjoyed considerable media coverage and recognition in numerous newspapers, magazines, and other publications.

12.     Sloan has extensively promoted its company and products, for example, by its unique and high-profile collaboration with the Chicago Cubs for many years. Signage and products featuring Sloan are prominently displayed around Wrigley Field and the Cubs' spring training stadium in Mesa, Arizona, which is named Sloan Park. Sloan is also the exclusive sponsor of the ARCHITECT magazine Studio Prize and the Sloan Award (www.studioprize.com). The awards offer a substantial cash prize for courses at accredited architecture schools that share Sloan's focus on innovation, ethics, sustainability, and water conservation.

13.     Sloan's founder was an industry pioneer who ushered in the modern plumbing era with his invention of the Royal® flushometer. The Royal flushometer was the first product of its kind and has been available from Sloan from its introduction in 1906 through today. For more than a century, Sloan has engaged in the design, development, manufacture, promotion, and sale of its Royal flushometer.

14. In 1969, the appearance of the Royal flushometer was changed to the current design (the "Design") that today—decades later—is still promoted, marketed and sold. The change in the appearance in 1969 was made to give the flushometer a modern, clean, distinctive image; an update to the original design that had not significantly changed in appearance since 1906. It was only in appearance, not the function of the flushometer, that a change was made.

15. A photograph of an example of the Sloan Royal flushometer Design is shown below in Illustration 1.



**Illustration 1: Sloan Royal Flushometer**

16. The Sloan Royal flushometer Design is unique, distinctive, and non-functional. For more than 50 years, Sloan has continuously and extensively promoted and used this Design in the United States and Illinois. Through that continuous promotion and use, Sloan's Design has become a well-known indicator of the origin and quality of Sloan flushometer products. Sloan's Design has also acquired substantial secondary meaning nationally and in the State of Illinois.

17. Sloan products bearing the Design are currently marketed under the Sloan Royal product lines for use in restrooms, bathrooms, water closets, urinals, bedpan washers, and service sinks.

18.     Sloan products bearing the Design are advertised through Sloan's website (www.sloan.com) and sold by Sloan and through well-known retailers and distributors across the United States and Illinois, such as Home Depot, Ferguson Enterprises, and Grainger. Sloan products are also available on Amazon.

19.     Sloan has sold tens of millions of units of flushometer products bearing the Design, generating revenue exceeding $1 billion.

20.     Sloan has spent tens of millions of dollars to extensively market, advertise, and promote its products bearing the Design.

21.     Sloan promotes its brand and products bearing the Design on social media sites, such as:

- Facebook (https://www.facebook.com/SloanValveCompany/);

- Twitter (https://twitter.com/sloan_valve);

- YouTube (https://www.youtube.com/user/SloanValveCompany);

- Instagram (https://www.instagram.com/sloan_valve/); and

- LinkedIn (https://www.linkedin.com/company/sloan-valve-company/).

22.     There are millions of installations of Sloan products bearing the Design across the United States, including in every State, and worldwide. For example, Sloan's products bearing the Design are installed in well-known, high-traffic locations throughout the United States, including, *inter alia*, airports (*e.g.*, O'Hare International Airport), sports arenas (*e.g.*, Coors Field), convention centers (*e.g.*, Los Angeles Convention Center), hospitals (*e.g.*, Rush University Medical Center, Inova Fairfax Hospital), and landmarks (*e.g.*, Navy Pier, Shedd Aquarium, Old Chicago Post Office, Disneyland Resort).

23.     The appearance of the Design distinguishes Sloan products from those manufactured and marketed by other companies. Products bearing the Design are recognized as Sloan products because of their appearance. Sloan's products bearing the Design are used by and well-known at least among those who specify, select, purchase, resell, and/or maintain flushometers, including commercial plumbers, plumbing architects, building engineers and facility managers, commercial construction managers, and commercial plumbing retailers.

24.     Sloan and Sloan's Design are associated with high quality products that comply with industry standards. For example, the Design is used on Sloan products that comply with the Americans with Disabilities Act (ADA), and the Buy American Act (BAA), and are certified to the Uniform Plumbing Code (UPC).

25.     As a result of Sloan's extensive, exclusive and continuous use of its Design, the Design is a source identifier, and Sloan owns both federally registered and common law trade dress rights in the Design (collectively the "Sloan Trade Dress"), as described below in paragraphs 26–28.

26.     Sloan owns U.S. Trademark Registration No. 1,514,511 ("the '511 Registration") for the trade dress shown in Illustration 2, below, for "flushometers." Sloan filed its application for registration with the U.S. Patent and Trademark Office ("PTO") on July 13, 1987. Sloan's application described the mark as a "flushometer configuration" and specified that "[t]he mark is used as the configuration of the goods." During the trademark application process, Sloan submitted evidence to the PTO establishing that the mark was not functional and was inherently distinctive. The PTO subsequently allowed the application and no party opposed it. The PTO then registered the mark on November 29, 1988.



**Illustration 2: Sloan's U.S. Trademark Registration No. 1,514,511**

27.     The '511 Registration is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, which is conclusive evidence of the validity of the registered mark pursuant to 15 U.S.C. § 1115(b). A copy of the '511 Registration is attached as Exhibit 1.

28.     Sloan also owns common law trade dress rights in the non-functional and distinctive overall look, design, and appearance of the flushometer Design as shown in Illustration 1, including, but not limited to, the design, style, shape, and appearance of the curves, contours, lines and tapers of the external surface of the flushometer body; the design, style, shape and appearance of the curves, contours, lines and tapers of the external surface of the flushometer outer cover; the design, style, shape and appearance of the curves, contours, lines and tapers of the external surface of the handle coupling; and the relationship of these features to each other and to other features.

29.     The Sloan Trade Dress is not functional.  It is not essential to the use or purpose of the flushometer. The appearance of a flushometer can vary significantly without affecting, to any

significant degree, the product's ability to perform its primary function, to dispense a measured volume of water to a toilet or urinal. Furthermore, the Sloan Trade Dress does not affect the cost or quality of the flushometer because it does not necessarily result in a simple or inexpensive method of manufacture. To this end, multiple alternative designs are available from competitors. The existence of wide-ranging competitive designs for functionally equivalent flushometers supports that Sloan's exclusive use of the Sloan Trade Dress does not place competitors at a significant non-reputation related disadvantage. Rather, Sloan's exclusive rights in the unique, and distinctive flushometer Design serves to enhance competition by incentivizing competitors to develop aesthetically appealing design configurations and have the design protected against unauthorized copying.

30.     As a result of, *inter alia*, Sloan's exclusive, continuous, and substantial use of the Sloan Trade Dress, Sloan's exclusive, continuous, and substantial marketing, advertising, and promoting of its company and products bearing the Sloan Trade Dress, and the publicity and attention that has been paid to Sloan and products bearing the Sloan Trade Dress, the Sloan Trade Dress has acquired valuable goodwill and substantial secondary meaning in both Illinois and national marketplaces, and the Sloan Trade Dress is a source identifier.

## General Allegations – Defendants' Unfair and Unlawful Activities

31.     On information and belief, the Defendants work together (and are alter egos of each other in such work) and have purposefully used, or contributed to another's use of, or induced another's use of the Sloan Trade Dress or colorable imitations thereof in a manner likely to confuse, deceive, or mislead, including by selling, offering to sell, distributing, promoting, or advertising counterfeit products bearing the Sloan Trade Dress or confusingly similar imitations

of the Sloan Trade Dress (the "Infringing Products"). Illustration 3 below shows the Sloan Trade

Dress (left) and one of the defendants' Infringing Products (right).

| Illustration 3: Sloan Trade Dress (Left) and Representative Example of Defendants' Infringing Products (Right) |
| --- |



GQXY Model GQ-817

32. The Defendants' Infringing Products include, at a minimum, those listed below in Table 1. Some of the Infringing Products are promoted under the name GQXY and some are not. Detailed images of the Amazon.com listings for known Infringing Products are included in Exhibit 2.

| Table 1: The Infringing Products | | |
|---|---|---|
| **Product Number** | **Product Image** | **Description** |
| GQ-817 | The GQXY's brand that Manual flatwise 0.5GPF Urinal Flush Valve,Chrome,GQ817, white flushometer urinal — ★★★★☆ · 66 — $94⁹⁹ — Save 5% with coupon — ✓prime — FREE delivery **Wed, Feb 15** — Or fastest delivery **Fri, Feb 10** | Manual Urinal Flushometer |
| GQ-818 | GQXY's brand that Manual flatwise 1.6GPF Flush Valve,Chrome,GQ818, useful and convenient flushometer toilet — ★★★★☆ · 57 — $89⁹⁹ — Save 5% with coupon — ✓prime — FREE delivery **Thu, Feb 16** — Or fastest delivery **Fri, Feb 10** | Manual Toilet Flushometer |
| GQ-819 | The GQXY's brand that 1.28GPF manual flush valve,GQ-819,popular toilet flushometer, Polish Chrome — ★★★★☆ · 25 — $89⁹⁹ — Save 5% with coupon — ✓prime — FREE delivery **Tue, Feb 14** — Or fastest delivery **Tomorrow, Feb 9** | Manual Toilet Flushometer |
| GQ-820 | The GQXY's brand that Manual flatwise 1.0 GPF Urinal Flush Valve,Chrome,GQ-820,popular urinal flushometer — ★★★★☆ · 13 — $94⁹⁹ $110.00 — Save 5% with coupon — ✓prime — FREE delivery **Tue, Feb 14** — Or fastest delivery **Tomorrow, Feb 9** | Manual Urinal Flushometer |
| GQ-841 | The GQXY brand that GQ-841 battery Powered Automatic 1.6 GPF Sensor Toilet Flush Valve, For 1-1/2-Inch Flush tube connection in toilet — ★★★☆☆ · 10 — $269⁹⁰ — Save 8% with coupon — ✓prime — FREE delivery **Wed, Feb 15** — Or fastest delivery **Sat, Feb 11** | Sensor Toilet Flushometer |
| GQ-842 | The GQXY brand that GQ-842 battery Powered Automatic 0.5GPF Sensor and time delay Urinal Flush Valve, for 3/4" Spud Connection in Urinal — ★★★★☆ · 15 — $269⁹⁰ — Save 8% with coupon — ✓prime — FREE delivery **Tue, Feb 14** — Or fastest delivery **Fri, Feb 10** | Sensor Urinal Flushometer |

| Table 1: The Infringing Products | | |
|---|---|---|
| **Product Number** | **Product Image** | **Description** |
| GQ-843 | The GQXY brand that GQ-843 battery Powered Automatic 1.0 GPF Sensor and time delay Urinal Flush Valve, Chrome, Sensor urinal flushometer used in Urinal ★★★★★ 3 $269⁰⁰ Save 8% with coupon ✓prime FREE delivery **Tue, Feb 14** Or fastest delivery **Fri, Feb 10** Only 19 left in stock - order soon. | Sensor Urinal Flushometer |
| TPH - 8108-1 | 186-1 Low Consumption 3012636 Urinal Flushometer Replacement 1.0 GPF for 3/4 inch Top Spud Urinals (TPH-8108-1) 5.0 ★★★★★ ~ (1) $74⁰⁰ FREE delivery Feb 24 - 28 | Manual Urinal Flushometer |
| TPH-8108-2 | Manual Flush Valve All Brass Commercial Grade Sloan Replacement 1.6 GPF (TPH-8108-2) 3.7 ★★★★☆ ~ (4) $69⁰⁰ FREE delivery Feb 24 - 28 Only 18 left in stock - order soon. | Manual Toilet Flushometer |

33.     On information and belief, Defendants Kexin and New Rich conduct business activities in connection with the Infringing Products and are responsible for the infringing acts described in this complaint. On information and belief, Defendants Kexin and New Rich are alter egos of each other when conducting business activities in connection with the Infringing Products and they have a unity of interest and ownership such that they do not operate as separate entities and separate personalities of the entities no longer exist, they operate as a mere shell of each other, work to conceal their identities with respect to the infringing activities, and operate in bad faith to infringe Sloan's rights. On information and belief, the circumstances are such that adherence to the fiction of separate entities would promote injustice or inequitable circumstances.

34.     Defendant New Rich is listed as the manufacturer for all GQXY products sold on Amazon.com. See Exhibit 2. New Rich owns European and UK trademark registrations for "GQXY" (registration numbers 018252442 and UK00918252442 respectively). Trademark registrations for GQXY are attached in Exhibit 3.

35.     On information and belief, the business name associated with all GQXY product listings on Amazon.com, "xianggang xinfu guojimaoyi youxiangongsi," is an alias of New Rich. See Exhibit 2.

36.     Defendant Kexin is a Chinese manufacturer of bathroom fixtures that use the Sloan Trade Dress. As shown in Table 2 below, Kexin's website, www.cnkexin.com, displays products exhibiting the Sloan Trade Dress in an online catalog.

| Table 2: Infringing Product on cnkexin.com |
| :---: |
|  |

37.     Kexin's on-site show room in China has exhibited infringing GQXY flushometers. Kexin also maintains a YouTube account that features videos displaying Infringing Products.  On information and belief, Kexin not only manufactures the flushometers that are sold as infringing GQXY products, but operates the GQXY brand. On information and belief, a legal representative and shareholder of Kexin, Guan Jianchao, also acts as the sole director and as a shareholder of New Rich. A Kexin model number appears in the URL of an Amazon listing for an infringing GQXY product.

38.     Furthermore, a shareholder and export manager of Kexin, Qiu Dongmei, is listed as the incorporator of a Colorado corporation named SMSC Industries LTD (SMSC). SMSC owns U.S. Trademark Registration No. 5781338 for "GQXY" for flushometers and other goods.

39.     On information and belief, Kexin sells and ships Infringing Products to entities in the United States. On information and belief, the entities to which Kexin sells and ships the Infringing Products then sell the Infringing Products on Amazon.com.

40.     For example, on information and belief, Kexin sells and ships Infringing Products to Commercial Lighting Services LLC ("CLS"), a company located and doing business in the United States. CLS promotes the Infringing Products on Amazon.com as "Sloan Replacement[s]" as shown in Table 3 below. The numeric portion (8108-2) of the model numbers associated with CLS's infringing products, *e.g.* TPH-8108-2, are the same as the numeric portion (8108-2) of the model numbers of Kexin's Infringing Products, *e.g.* GS-8108-2. CLS also maintains a YouTube account with a video displaying an Infringing Product. An identical video with Kexin branding is promoted on Kexin's YouTube page (discussed above in paragraph 37). An Amazon reviewer in the United States wrote that the Infringing Products sold by CLS "[l]ook almost exactly like the Sloan's they replaced."

**Table 3: Infringing Products Sold by Commercial Lighting Services on Amazon.com**



41. On information and belief, Defendants intentionally sell, or contribute to the sale of, or induce the sale of Infringing Products on Amazon.com with no geographic region restrictions preventing sales in the United States. On information and belief, Defendants generate substantial revenue annually through sales of Infringing Products.

42. Sloan used the Sloan Trade Dress extensively and continuously long before the Defendants began selling, offering to sell, distributing, promoting, or advertising the Infringing Products. The Sloan Trade Dress acquired secondary meaning in the United States and in the State of Illinois long before the Defendants commenced their unlawful use of the Sloan Trade Dress.

43. Sloan has never authorized the Defendants to sell, offer to sell, distribute, promote, or advertise the Infringing Products.

44. Sloan's products bearing Sloan's Trade Dress and the Defendants' Infringing Products are the same goods – flushometers.

45.    Sloan's products bearing Sloan's Trade Dress and Defendants' Infringing Products are marketed and sold through the same or similar channels of trade. For example, both Sloan's flushometers bearing the Sloan Trade Dress and the Defendants' Infringing Products are available for sale on Amazon.com.

46.    On information and belief, the Defendants' distribution of the Infringing Products has caused the Infringing Products to become available for sale in the United States through other online retailers such as Ebay, Fish Pond, Desert Cart, Tizzas, Downtown Outbound, and L&B Mall.

47.    On information and belief, the Defendants deliberately designed the Infringing Products to incorporate the Sloan Trade Dress as counterfeits or colorable imitations thereof with the intent of causing confusion.

48.    Images on Kexin's website, cnkexin.com, as well as on the Amazon listings for the GQXY products also show Infringing Products that do not have letters "GQXY" on them as shown in tables 4 and 5 below.

**Table 4: Unmarked Infringing Product Shown on cnkexin.com**



**Table 5: Unmarked Infringing Product shown on amazon.com**



49.     As a result of the Defendants' unlawful activities related to their use of the Sloan

Trade Dress or colorable imitations thereof on the Infringing Products and advertising, there is a

likelihood of confusion between Defendants and their products on the one hand, and Sloan and its products on the other hand.

50.     The Defendants' use of the Sloan Trade Dress is misleading as to the quality of the Infringing Products. For instance, on information and belief, the Infringing Products do not comply with or are not certified to industry standards such as the ADA, the BAA, or the UPC. The Defendants' use of the Sloan Trade Dress may cause a mistaken belief that their goods meet industry standards.

51.     The Defendants' unlawful use of the Sloan Trade Dress damages the valuable goodwill and business reputation for quality associated with the Sloan Trade Dress. For example, purchasers of the Infringing Products have expressed disappointment due to poor quality. Detailed images of the Defendants' Amazon.com listings featuring these negative purchaser reviews are included in Exhibit 2, for example:

- In a review titled "Not satisfied," an Amazon customer reported that "[w]e have ordered 4 of these flush valves. One was defective immediately upon installation. One started leaking after 2 hrs. We are a church and only use these bathrooms a few times a week."

- In a review titled "Failure within four months," an Amazon customer reported that, "[t]he top gasket failed . . . within 4 months. Started to leak everywhere out of the bonnet. After sending a question on parts the vendor would not respond either."

- In a review titled "All problems no help," an Amazon customer reporting issues with a flush sensor noted that they had, "[c]alled [the] company for help with no resolve and no warranty protection."

52.     As discussed above and as set forth in the counts below, the Defendants' actions violate Sloan's rights.

## Count I: Trademark Infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

53.     Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.     The Defendants' offers to sell, sales, distribution, promotion and advertisement of the Infringing Products violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) by directly infringing Sloan's Trade Dress, or by contributing to or inducing infringement of Sloan's Trade Dress by others.

55.     Sloan owns duly issued and valid rights in U.S. Trademark Registration No. 1,514,511 covering the Sloan Trade Dress. The Sloan Trade Dress has a distinctive overall appearance that is non-functional and has also acquired substantial secondary meaning in the market place through Sloan's extensive, exclusive and continuous use, advertising, promotion, and sales of products bearing the Sloan Trade Dress for many decades in the United States. Through that extensive, exclusive and continuous use, advertising, promotion, and sales, the Sloan Trade Dress became a well-known indicator of the origin and quality of Sloan flushometers before the Defendants' unauthorized use of the Sloan Trade Dress.

56.     The Defendants' use, or contribution to another's use, or inducement of another's use of the Sloan Trade Dress in counterfeit products or colorable imitations is likely to cause confusion as to the origin, sponsorship, or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Sloan.

57. The Defendants' use, or contribution to another's use, or inducement of another's use of the Sloan Trade Dress in counterfeit products or colorable imitations has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

58. On information and belief, the Defendants' use, or contribution to another's use, or inducement of another's use, of the Sloan Trade Dress on counterfeit products or colorable imitations has been intentional and willful as is evidenced at least by the similarity of the Infringing Products to the Sloan Trade Dress.

59. As a result of Defendants' conduct, Sloan is entitled to injunctive relief, and Sloan is also entitled to recover Defendants' profits, Sloan's actual damages, enhanced damages, statutory damages, a finding that this is an exceptional case, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1114, 1116, and 1117.

**Count II: Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

60. Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 59 as though fully set forth herein.

61. The Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and importing of the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by directly infringing Sloan's Trade Dress, or by contributing to or inducing infringement of Sloan's Trade Dress by others. The Defendants' use of the Sloan Trade Dress or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with Sloan and as to the origin, sponsorship, or

approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Sloan.

62.     The Sloan Trade Dress is federally registered under U.S. Trademark Registration No. 1,514,511, and is entitled to protection under both federal law and common law. The Sloan Trade Dress includes unique, distinctive, and non-functional designs. Sloan has extensively, exclusively and continuously promoted and used its trade dress in the United States. Through that extensive, exclusive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products. The Sloan Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Sloan Trade Dress acquired this secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with the Infringing Products.

63.     The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

64.     On information and belief, the Defendants' use of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

65.     Sloan is entitled to injunctive relief, and Sloan is entitled to recover at least the Defendants' profits, Sloan's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count III: Unfair Competition and False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

66. Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 65 as though fully set forth herein.

67. The Defendants' offers to sell, sales, distribution, promotion, and advertisement of the Infringing Products, in competition with Sloan, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68. The Sloan Trade Dress is federally registered under U.S. Trademark Registration No. 1,514,511, and is entitled to protection under both federal law and common law. The Sloan Trade Dress has a distinctive overall appearance that is non-functional and has also acquired substantial secondary meaning in the market place through Sloan's extensive, exclusive and continuous use, advertising, promotion, and sales of products bearing the Sloan Trade Dress for many decades in the United States. Through that extensive, exclusive and continuous use, advertising, promotion, and sales, the Sloan Trade Dress became a well-known indicator of the origin and quality of Sloan flushometers before the Defendants' unauthorized use of the Sloan Trade Dress.

69. The Defendants' use of the Sloan Trade Dress or colorable imitations thereof constitutes a false designation of origin and unfair competition that is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Sloan.

70. The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to

the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products and Sloan.

71.     On information and belief, the Defendants' use of the Sloan Trade Dress or colorable imitations thereof has been intentional and willful as is evidenced at least by the similarity of the Infringing Products to the Sloan Trade Dress.

72.     As a result of the Defendants' conduct, Sloan is entitled to injunctive relief, and Sloan is also entitled to recover the Defendants' profits, Sloan's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV: Injury to Business Reputation and Trade Dress Dilution in Violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65**

73.     Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 72 as though fully set forth herein.

74.     The Defendants' commercial use of the Sloan Trade Dress or colorable imitations thereof causes injury to Sloan's business reputation and dilution of Sloan's Trade Dress in violation of 765 ILCS 1036/65.

75.     The Defendants' commercial use of the Sloan Trade Dress or colorable imitations thereof on poor quality products damages the business reputation and goodwill associated with the Sloan Trade Dress and Sloan's products bearing the Sloan Trade Dress.

76.     The Defendants' commercial use of the Sloan Trade Dress or colorable imitations thereof, lessens of the capacity of the Sloan Trade Dress to identify and distinguish Sloan's goods or services.

77.     The Sloan Trade Dress is famous at least among those who specify, select, purchase, resell, and/or maintain flushometers, including commercial plumbers, plumbing

architects, building engineers and facility managers, commercial construction managers, and commercial plumbing retailers within the State of Illinois. Sloan has extensively and continuously promoted and used the Sloan Trade Dress for several decades in the State of Illinois. Through that extensive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products in Illinois. The Sloan Trade Dress has also acquired substantial secondary meaning in the Illinois marketplace. Moreover, the Sloan Trade Dress acquired this fame and secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with flushometer products.

78.     The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

79.     On information and belief, the Defendants' use of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

80.     Sloan is entitled to injunctive relief under at least 765 ILCS 1036/65.

**<u>Count V: Violation of Illinois Deceptive Trade Practices Act, 815 ILCS 510/2</u>**

81.     Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 80 as though fully set forth herein.

82.     The Defendants' use of the Sloan Trade Dress, or colorable imitations thereof, constitutes deceptive practices in violation of 815 ILCS 510/2.

83. By using the Sloan Trade Dress, the Defendants pass their flushometers off as those of another. Additionally, the Defendants' use of the Sloan Trade Dress or colorable imitations thereof is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association of the Defendants and the Defendants' products, at least by creating the false and misleading impression that the Defendants and the Defendants' products are manufactured by, authorized by, or approved by Sloan, or are otherwise associated with Sloan's products.

84. The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

85. On information and belief, the Defendants' use of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

86. Sloan is entitled to injunctive relief, and Sloan is entitled to recover at least costs or reasonable attorney fees under at least 815 ILCS 510/3.

### Count VI: Common Law Trade Dress Infringement

87. Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 86 as though fully set forth herein.

88. The Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and importing of the Infringing Products, in direct competition with Sloan, constitute common law trade dress infringement. The Defendants' use, or contribution to

another's use, or inducement of another's use of the Sloan Trade Dress or colorable imitations thereof is likely to cause confusion, mistake, or deception as to origin, affiliation, or sponsorship, at least by creating the false and misleading impression that the Defendants or the Defendants' products are manufactured by, authorized by, or approved by Sloan, or are otherwise associated with Sloan's products.

89. The Sloan Trade Dress is entitled to protection under the common law. Sloan has extensively and continuously promoted and used the Sloan Trade Dress for several decades in the United States and the State of Illinois. Through that extensive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products. The Sloan Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Sloan Trade Dress acquired this secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with flushometer products.

90. The Defendants' use, or contribution to another's use, or inducement of another's use of the Sloan Trade Dress or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

91. On information and belief, the Defendants' use, or contribution to another's use, or inducement of another's use of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

92. Sloan is entitled to injunctive relief, and Sloan is also entitled to recover at least Sloan's damages, the Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## <u>Count VII: Common Law Unfair Competition</u>

93.     Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 92 as though fully set forth herein.

94.     The Defendants' activities described above, including, for example, the Defendants' use of the Sloan Trade Dress, or colorable imitations thereof, through advertisements, promotions, offers to sell, sales, and distribution of the Infringing Products, constitute common law unfair competition, at least by palming off or passing off of the Defendants' goods and by simulating the Sloan Trade Dress in an intentional and calculated manner that is likely to cause confusion, mistake, or deception as to origin, affiliation, or sponsorship, at least by creating the false and misleading impression that the Defendants or the Defendants' products are manufactured by, authorized by, or approved by Sloan, or are otherwise associated with Sloan's products.

95.     The Sloan Trade Dress is entitled to protection under the common law. Sloan has extensively and continuously promoted and used the Sloan Trade Dress for several decades in the United States and the State of Illinois. Through that extensive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products. The Sloan Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Sloan Trade Dress acquired this secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with flushometer products.

96.     The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Trade Dress, Sloan's products, and Sloan.

97.     On information and belief, the Defendants' use of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

98.     Sloan is entitled to injunctive relief, and Sloan is also entitled to recover at least Sloan's damages, the Defendants' profits, punitive damages, costs, and reasonable attorney fees.

### Count VIII: Common Law Misappropriation

99.     Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 98 as though fully set forth herein.

100.    The Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and importing of the infringing products, in direct competition with Sloan, constitute common law misappropriation.

101.    Sloan created the Royal flushometers bearing the Sloan Trade Dress through extensive time, labor, effort, skill, and money. The Defendants have wrongfully used Sloan's trade dress in competition with Sloan and gained a special advantage because the Defendants were not burdened with the expenses incurred by Sloan. The Defendants have commercially damaged Sloan, at least by causing confusion as to origin, sponsorship, or affiliation of the Defendants' Infringing Products, by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Sloan, and by taking away sales that Sloan would have made.

102.    The Sloan Trade Dress is entitled to protection under the common law. Sloan has extensively and continuously promoted and used the Sloan Trade Dress for several decades in the United States and the State of Illinois. Through that extensive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products. The Sloan

Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Sloan Trade Dress acquired this secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with flushometer products.

103.    The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Trade Dress, Sloan's products, and Sloan.

104.    On information and belief, the Defendants' misappropriation of the Sloan trade dress or colorable imitations thereof has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

105.    Sloan is entitled to injunctive relief, and Sloan is also entitled to recover at least Sloan's damages, the Defendants' profits, punitive damages, costs, and reasonable attorney fees.

### Count IX: Unjust Enrichment

106.    Sloan realleges and incorporates the allegations set forth in paragraphs 1 through 105 as though fully set forth herein.

107.    The Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and importing of its infringing products, in direct competition with Sloan, constitute unjust enrichment, at least because the Defendants have wrongfully obtained benefits at Sloan's expense. The Defendants have also, *inter alia*, operated with an undue advantage.

108.    Sloan created the Royal flushometers bearing the Sloan Trade Dress through extensive time, labor, effort, skill, and money. The Defendants have wrongfully used and are wrongfully using the Sloan Trade Dress in competition with Sloan, and have gained and are

gaining a wrongful benefit by undue advantage through such use. The Defendants have not been burdened with the expenses incurred by Sloan, yet the Defendants are obtaining the resulting benefits for their own business and products.

109. The Sloan Trade Dress is entitled to protection under the common law. Sloan has extensively and continuously promoted and used the Sloan Trade Dress for several decades in the United States and the state of Illinois. Through that extensive and continuous use, the Sloan Trade Dress has become a well-known indicator of the origin and quality of Sloan's products. The Sloan Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Sloan Trade Dress acquired this secondary meaning before the Defendants commenced their unlawful use of the Sloan Trade Dress in connection with flushometer products.

110. The Defendants' use of the Sloan Trade Dress or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Sloan for which Sloan has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Sloan Trade Dress, Sloan's products, and Sloan.

111. On information and belief, the Defendants' unjust enrichment at Sloan's expense has been intentional, willful, and malicious. The Defendants' bad faith is evidenced at least by the similarity of the infringing products to the Sloan Trade Dress.

112. Sloan is entitled to injunctive relief, and Sloan is also entitled to recover at least the Defendants' profits.

## **Demand for Jury Trial**

Sloan hereby demands a jury trial on all issues so triable.

- 30 -

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

A.     Judgment that the Defendants have (i) infringed Sloan's registered trademark in violation of § 1114(1) of Title 15 in the United States Code; (ii) infringed Sloan's Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) injured Sloan's business reputation and diluted Sloan's Trade Dress in violation of 765 ILCS 1036/65; (v) violated the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2; (vi) violated Sloan's common law rights in Sloan's Trade Dress; (vii) engaged in common law unfair competition; (viii) engaged in common law misappropriation; and (ix) been unjustly enriched at Sloan's expense;

B.     A determination that Defendants' conduct has been willful and intentional and that this is an exceptional case;

C.     An injunction against further infringement of the Sloan Trade Dress, and further acts of unfair competition, dilution, deceptive trade practices, misappropriation and unjust enrichment by the Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least an injunction against advertising, promoting, offering for sale, selling, and distributing goods bearing the Sloan Trade Dress, pursuant to at least 15 U.S.C. § 1116; 765 ILCS 1036/65; and 815 ILCS 510/3.

C.     An Order directing the seizure and destruction of (i) all the Infringing Products in the Defendants' possession, custody, or control, and (ii) all advertising materials related to the Infringing Products in the Defendants' possession, custody, or control, including on the Internet,

pursuant to at least 15 U.S.C. § 1118.

      D.     An Order barring importation of the infringing products or colorable imitations thereof into the United States, and barring entry of the infringing products or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

      E.     An award of the Defendants' profits, Sloan's actual damages, enhanced damages, statutory damages, punitive damages, costs, prejudgment and post judgment interest, and Sloan's reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1116, and 1117; 765 ILCS 1036/65; 815 ILCS 510/2; and 815 ILCS 510/3.

      F.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 23, 2023

By: */s/ Louis DiSanto*
Louis DiSanto
Illinois Bar No. 6286044
ldisanto@bannerwitcoff.com
J. Pieter van Es
Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Jacob T. Earl
Illinois Bar No. 6342032
jearl@bannerwitcoff.com

Banner & Witcoff, Ltd.
71 South Wacker Drive
Suite 3600
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR SLOAN VALVE COMPANY**